# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

MARIE E. KOUDELA,          :
                               :
          Plaintiff       :    No. 3:12-CV-00475
                               :
        v.                 :
                               :
CAROLYN W. COLVIN,        :
ACTING COMMISSIONER OF   :    (Judge Nealon)
SOCIAL SECURITY,          :
                               :
          Defendant    :

## **MEMORANDUM**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Marie Koudela's claim for social security supplemental security income benefits. For the reasons set forth below, the decision of the Commissioner will be reversed.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits. However, there are other eligibility requirements relating to an applicant's financial situation which must be met.

Koudela was born on January 26, 1989 and is considered a "younger individual"[1] whose age would not seriously impact her ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c). (Tr. 44, 136). At the time of the ALJ hearing, she was entering her senior year in college as a full-time student. (Tr. 45-46). Koudela protectively filed an

---

1. The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

application for supplemental security income on October 15, 2008, alleging disability since June 1, 2004 due to osteosarcoma of the left femur. (Tr. 73, 136, 141, 154). After her request for benefits was denied at the initial level, she filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 77-87). A hearing was held on May 20, 2010. (Tr. 41-72). The ALJ issued a decision on June 21, 2010, denying Koudela benefits. (Tr. 26-35). Koudela then requested review by the Appeals Council which, by Notice of Action dated January 24, 2012, denied review, making the decision of the ALJ final. (Tr. 1-5, 21).

On March 16, 2012, Koudela filed a complaint seeking review of the Commissioner's denial of her application for Social Security supplemental security income benefits. (Doc. 1). The Commissioner filed an answer to the complaint and a copy of the administrative record on May 15, 2012. (Docs. 8, 9). Koudela filed the brief in support of her appeal on June 19, 2012, and the Commissioner's brief was filed on August 28, 2012. (Docs. 10, 16). Koudela filed a reply brief on September 11, 2012. (Doc. 17). The matter is ripe for disposition and, for the reasons set forth below, Koudela's appeal will be granted.

**Standard of Review**

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A

single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-07. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920;

4

Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work, and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four, the administrative law judge must determine the claimant's residual functional capacity. Id. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Discussion**

The ALJ proceeded through each step of the sequential evaluation process and determined that Koudela was not disabled. (Tr. 26-35). At step one, the ALJ found that Koudela had not engaged in substantial gainful work activity since October 15, 2008, the

application date.[2] (Tr. 28).

At step two, the ALJ found that Koudela suffered from the severe impairment of osteosarcoma of the femur with the residual effects of surgery.[3] (Tr. 28).

At step three of the sequential evaluation process, the ALJ found that Koudela did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 28-29).

At step four of the sequential evaluation process, the ALJ determined that Koudela had the residual functional capacity to perform a range of sedentary work, with the option to alternate between sitting and standing for up to ten minutes after every one hour of sitting, she could be on-task while standing; she is limited to no more than occasional stooping, balancing and climbing ramps and stairs; she must avoid kneeling, squatting, crouching, crawling or climbing ropes, ladders, or scaffolds; she must avoid extreme heat or cold; she must avoid working outside where she could be exposed to weather; she must avoid vibration; and is limited to total standing and/ or walking no more than one hour in an eight-hour workday. (Tr. 29-33). The ALJ then found that Koudela has no past relevant work. (Tr. 33).

---

2. The ALJ noted that Koudela worked after the alleged disability onset date, however such work did not amount to substantial gainful activity. (Tr. 28). Substantial gainful activity is work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510 and 20 C.F.R. § 416.910.

3. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

At step five, the ALJ determined that there are a significant number of jobs in the national economy that Koudela could perform.[4] (Tr. 34). Koudela was therefore found to be not disabled under the Act since October 15, 2008, the application date. (Tr. 34-35).

In her appeal brief, Koudela argues that the ALJ erred by failing to consider medical evidence and give appropriate weight to the opinions of the treating physicians; failing to provide an accurate hypothetical question; and, failing to adequately consider Koudela's allegations of pain and limitations. (Doc. 10, pg. 4).

### Treating Physicians' Opinions

Koudela argues that the ALJ failed to consider the opinions of Dr. Parrish and Dr. Mooney and failed to give appropriate weight to the opinion of Dr. Comito. (Doc. 10, pgs. 5-7). The Commissioner argues that the ALJ appropriately evaluated the opinions of the treating physicians. (Doc. 16, pgs. 5-13).

Koudela was diagnosed with osteosarcoma of the left femur. (Tr. 456). She received chemotherapy and underwent surgery. (Tr. 456). In September 2004, Dr. William Parrish performed a left femur resection with allograft interposition and a retrograde intramedullary nail. (Tr. 438, 456).

In January 2008, Dr. Parrish noted that Koudela had some pain and discomfort, she had excellent healing, there was good fixation and solid callus formation around the bone graft, and he recommended that she get a shoe insert for her leg length discrepancy. (Tr. 437-38).

---

4. At the hearing, the vocational expert testified that Koudela would be capable of performing work as an addresser/ mail sorter, order clerk, and table worker. (Tr. 34, 68-71).

In August 2008, Koudela reported to Dr. Parrish that she always had some discomfort in her left leg. (Tr. 436). Dr. Parrish noted that she had a hard time getting her leg to heal and had tenderness over the screws. (Tr. 436). He prescribed Celebrex and recommended a follow-up visit. (Tr. 436).

On December 2, 2008, Dr. Parrish completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities. (Tr. 434-35). Dr. Parrish found that Koudela could frequently lift and carry two to three pounds, and occasionally lift and carry ten to twenty-five pounds; she could stand and walk one to two hours in an eight-hour workday, noting that she has a left leg length discrepancy since limb salvage surgery; she had no limitation with sitting; she was limited in pushing and pulling with her left lower extremity; she could occasionally bend and balance; she could never kneel, stoop, crouch or climb; and, she should avoid heights, moving machinery, vibration, temperature extremes, and wetness. (Tr. 434-35).

On September 29, 2009, Dr. Parrish wrote a letter stating that Koudela "should be considered permanently partially disabled." (Tr. 477). He reiterated that Koudela had an osteosarcoma of her femur and underwent complex reconstruction with an intercalary allograft, which resulted in a significant loss of muscle. (Tr. 477).

Koudela treated with Dr. Robert Mooney on several occasions. (Tr. 334-35; 340; 357-59; 459-61; 465-67; 475; 478-79). In March 2006, Koudela complained to Dr. Mooney that she had "persistent pain" in her left thigh. (Tr. 340). Dr. Mooney prescribed pain medications and informed Koudela that she should not expect her left leg to be pain-free. (Tr. 340). In July 2006, Dr. Mooney noted that Koudela had chronic pain and recommended that she use a

8

TENS unit for pain management. (Tr. 335). In September 2006, Dr. Mooney noted that Koudela suffered from chronic pain disorder; history of osteogenic sarcoma, left femur; and history of heterotopic femoral graft, left femur. (Tr. 334). He recommended that Koudela continue to use a TENS unit indefinitely. (Tr. 334).

In May and June 2008, Koudela treated with Dr. Mooney and continued to complain of left leg pain, pain in her right leg likely due to favoring her left leg, she also complained of dyspnea and trouble sleeping. (Tr. 359, 465-67).

In February 2009, Dr. Mooney noted that Koudela still had pain in her right hip and trouble sleeping. (Tr. 461). In March 2009, Dr. Mooney referred Koudela to Dr. John Deitch for an evaluation of chronic right leg pain. (Tr. 459-61; 471-72). In April 2009, Koudela continued to complain of persistent bilateral hip pain. (Tr. 475). In July 2009, Dr. Deitch noted that Koudela had pain in her right thigh and groin, pain in her left side, and he diagnosed left adductor strain. (Tr. 471).

On March 15, 2010, Dr. Mooney wrote a letter stating that due to Koudela's leg pain, it is "very possible" that she would be "unable to maintain full-time work in a competitive workplace environment without incurring absences at an unacceptable rate." (Tr. 478). Dr. Mooney also stated that Koudela's trouble with sleeping and daytime fatigue would hinder her ability to maintain full-time employment. (Tr. 479).

Koudela regularly treated with Dr. Melanie Comito, an oncologist. (Tr. 439-58). In February 2007, Dr. Comito noted that Koudela was off therapy for over two years, her left leg showed a well-healed incision down the lateral side, she had good range of motion of her knee and hip, she was able to walk with a minimal limp, there was no diagnostic evidence of a

recurrent tumor, and she continued to do quite well with her osteosarcoma. (Tr. 330).

In July 2008, Koudela reported to Dr. Comito that she had chronic pain in her left thigh and leg since undergoing surgery and she suffered from fatigue. (Tr. 446, 449). She described her pain as stabbing and the screw sites were painful to touch. (Tr. 449). A July 2008, x-ray of Koudela's left femur revealed stable post-operative changes of the left lower extremity and no evidence of recurrent tumor. (Tr. 444-45).

On September 6, 2008, Dr. Comito stated that Koudela's surgical options to fix her leg problems are "quite limited" and it is "most likely a permanent functional problem." (Tr. 439).

In January 2009, Dr. Comito noted that Koudela was off therapy for four years, she still had a lot of pain in her left leg and pain in her right leg, but otherwise she was doing "fairly well." (TR. 462-63).

Koudela also treated with Dr. Gregory Billy, a pain management specialist. (Tr. 367-68; 425-26). In July 2008, Koudela reported to Dr. Billy that she had pain where the pins in her knee were placed, the pain was "stabbing" at times, she had no trouble sleeping, slept without significant pain, and she used limited medications. (Tr. 367). Upon examination, Dr. Billy noted that Koudela had a normal gait, no problems ambulating on her heels or toes, she had some sensitivity around the distal screws of the left knee, diminished sensation over the anterior patellar incision, and other incisions were non-tender. (Tr. 367). Dr. Billy also noted that Koudela had full functional range of motion of her hip and knee joint and no reproduction of pain with internal or external rotation. (Tr. 367). He prescribed a Lidoderm patch for her pain and changed her shoe lift to help with the pain. (Tr. 368). In August 2008, Koudela

reported to Dr. Billy that she was doing somewhat better. (Tr. 429-30).

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir. 1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the administrative law judge may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Id. In choosing to reject the evaluation of a treating physician, an administrative law judge may not make speculative inferences from medical reports and may reject treating physician's opinions outright only on the basis of contradictory medical evidence. Id. An administrative law judge may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion. Id. An administrative law judge may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id. As one court has stated, "Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir 1990).

In the present matter, the ALJ rejected the opinions of Drs. Parrish, Mooney and

Comito, Koudela's treating and examining physicians. The ALJ acknowledged Dr. Parrish's opinion that Koudela was permanently, partially disabled. (Tr. 32). However, the ALJ determined that Dr. Parrish's clinical or objective findings do not substantiate this opinion. (Tr. 32). The ALJ also determined that Koudela's history of treatment is not consistent with someone experiencing totally debilitating symptoms, and her activities of daily living do not indicate that she would be unable to perform sedentary work. (Tr. 33).

The ALJ did not give controlling weight to Dr. Mooney's opinion that Koudela would not be capable of maintaining full-time work. (Tr. 33). The ALJ again stated that Dr. Mooney's clinical or objective findings do not support this opinion, Koudela's history of treatment is not consistent with someone experiencing totally debilitating symptoms, and her activities of daily living do not indicate that she would be unable to perform sedentary work. (Tr. 33).

The ALJ did not discuss Dr. Comito's opinion that Koudela's leg problems are likely permanent functional limitations.

Three treating physicians determined that Koudela was permanently, partially disabled, that she would not be able to maintain full-time work, and that she likely had permanent functional limitations. The ALJ erred in rejecting these opinions and essentially engaged in his own lay analysis of the medical records.

*Hypothetical Questions*

The Third Circuit has held, with respect to hypothetical questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative

employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (emphasis added). In Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002), the Third Circuit stated that "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." (citations omitted).

Koudela argues that the ALJ did not provide a hypothetical question that accurately reflected all of her limitations. (Doc. 10, pgs. 10-12). Specifically, Koudela argues that the ALJ should not have concluded that she could occasionally stoop. (Doc. 10, pg. 10). Koudela argues that Dr. Parrish determined that should could not stoop and the ALJ never included the complete inability to stoop in his hypothetical questions. (Doc. 10, pgs. 10-11).

The Government argues that Dr. Parrish did not specify the degree of Koudela's stooping limitation and did not provide supporting medical findings. (Doc. 16, pgs. 9-10). The ALJ did not give controlling weight to the opinion of Dr. Parrish. Therefore, the Government argues that the ALJ was not required to include the restriction of no stooping. (Doc. 16, pg. 10).

The ALJ asked the vocational expert to consider an individual of Koudela's same age, education and past work experience that could perform sedentary work with the option to alternate from sitting to stand for up to ten minutes for every one hour of sitting, could remain on-task while standing, could occasionally stoop, balance and climb ramps and stairs, would

not be able to kneel, squat, crouch, crawl or climb ropes, ladders or scaffolds, would not be able to tolerate extreme heat or cold, would not be able to work outside exposed to the weather, and could not tolerate vibration. (Tr. 69). The vocational expert testified that Koudela's past work as a data entry clerk would not be compromised, but her light duty work would be compromised. (Tr. 69). The vocational expert then testified that such an individual would be able to perform work as an addresser/ mail sorter, order clerk or table worker. (Tr. 69-70).

The ALJ then asked the vocational expert to consider that same hypothetical except that the standing and walking would total no more than one hour in an eight hour workday. (Tr. 70). The vocational expert testified that this restriction would not compromise the data entry job or the other jobs identified by the ALJ. (Tr. 70).

The ALJ posed a third hypothetical question to the vocational expert. (Tr. 70). He asked the vocational expert to consider that same hypothetical as the second one, except that the individual would require at least two extra unscheduled fifteen minute breaks in addition to the normal, morning, lunch and afternoon breaks. (Tr. 70). The vocational expert testified that if such requirements occurred on a regular, consistent basis, that would compromise full-time competitive employment on a sustained basis. (Tr. 70).

Because this Court finds that the ALJ erred in not giving controlling weight to the opinion of Dr. Parrish, the ALJ should have included the restriction of no stopping in his hypothetical questions.

### *Credibility Analysis*

"'[A]n ALJ's findings based on the credibility of the applicant are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a

witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525,

531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801

(10th Cir. 1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to

observe and assess witness credibility.')." Frazier v. Apfel, 2000 WL 288246 (E.D. Pa. 2000).

The Social Security Regulations provide a framework under which a claimant's subjective

complaints are to be considered. 20 C.F.R. § 404.1529. First, symptoms, such as pain,

shortness of breath, fatigue, et cetera, will only be considered to affect a claimant's ability to

perform work activities if such symptoms result from an underlying physical or mental

impairment that has been demonstrated to exist by medical signs or laboratory findings. 20

C.F.R. § 404.1529(b). Once a medically determinable impairment that results in such

symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of

such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. §

404.1529(b). In so doing, the medical evidence of record is considered along with the

claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the

following instructions in evaluating the credibility of the claimant's statements:

> In general, the extent to which an individual's statements about symptoms can
> be relied upon as probative evidence in determining whether the individual is
> disabled depends on the credibility of the statements. In basic terms, the
> credibility of an individual's statements about pain or other symptoms and their
> functional effects is the degree to which the statements can be believed and
> accepted as true. When evaluating the credibility of an individual's statements,
> the adjudicator must consider the entire case record and give specific reasons
> for the weight given to the individual's statements.

SSR 96-7p.

The ALJ reviewed the medical records and the treating and examining physicians' notes. (Tr. 29-33). He noted that Koudela lives at home with her family and at a dorm during school, she takes care of her personal needs, cleans, does laundry, walks, drives, manages money and bills, and goes out socially. (Tr. 31). The ALJ also noted that Koudela stated that she has to sit and take breaks while taking care of her personal needs or cooking. (Tr. 31-32). While determining that Koudela suffers from the impairments claimed, the ALJ found that the limitations resulting therefrom were overstated. The ALJ noted that Koudela's complaints "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 29-30).

The ALJ considered Koudela's testimony regarding her pain and daily activities and capabilities. (Tr. 29-30). At the hearing, Koudela testified that she can only drive or sit in a car for about an hour and then has to stop and stretch or take medication to ease her pain. (Tr. 44-45). She has a lot of pain while sitting in class, she cannot kneel, crouch, stoop or crawl. (Tr. 46-50). She can perform household chores, shop, and socialize, however she does so with pain and has to stop to rest and ease her pain. (Tr. 50-52). Koudela's parents also testified about her pain and limitations. (Tr. 63-67). Her father stated that Koudela experiences intense pain. (Tr. 63). Her mother testified that Koudela has to take several breaks while working. (Tr. 65-66). Upon review, substantial evidence does not support the Commissioner's decision that Koudela was not entirely credible.

Based upon a thorough review of the evidence of record, the Court finds that the

Commissioner's final decision is not supported by substantial evidence. The district court can award benefits only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178 (3d Cir. 1986); Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir. 1982). When faced with such cases, it is unreasonable for the court to give the administrative law judge another opportunity to consider new evidence concerning the disability because the administrative proceeding would only result in further delay in the receipt of benefits. See Livingston v. Cailfano, 614 F.2d 342, 345 (3d Cir. 1980). The decision whether to reverse or remand lies within the discretion of the court. See, e.g., Gilliland, 786 F.2d at 185; Rini v. Harris, 615 F.2d 625, 627 (5th Cir. 1980).

**Conclusion**

Substantial evidence in the record, specifically, the opinions of treating and examining physicians Drs. Parrish, Mooney and Comito, indicate that Koudela is disabled and entitled to receive benefits. Therefore, the decision of the Commissioner should be reversed with the direction that benefits be awarded to Koudela, as the Court finds that substantial evidence does not support the decision that Koudela is not disabled under the Act. An appropriate order follows.

**Date:** September 30, 2013

**United States District Judge**

17